IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 7, 2018

**STATE OF TENNESSEE v. DALVIN SMITH**

**Appeal from the Criminal Court for Shelby County**
**No. 15-06293      W. Mark Ward, Judge**

_____

**No. W2017-01915-CCA-R3-CD**

_____

After a jury trial, Defendant, Dalvin Smith, was convicted of two counts of reckless homicide, facilitation of especially aggravated robbery, two counts of attempted aggravated robbery, aggravated burglary, and employment of a firearm during the commission of a dangerous felony. Defendant received a total effective sentence of thirty-seven years in the Tennessee Department of Correction. On appeal, Defendant argues that the trial court abused its discretion by ordering an excessive sentence. After a thorough review of the facts and applicable case law, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. JAMES CURWOOD WITT, JR., J. filed a separate concurring opinion.

Dewun R. Settle, Memphis, Tennessee, for the appellant, Dalvin Smith.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas S. Bolduc, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jose Leon, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Factual and Procedural Background**

On December 10, 2015, Defendant and Co-defendant Jamaal Austin, Defendant's cousin, were indicted on the following charges:

| Count | Offense | Offense Classification |
|---|---|---|
| Count One | First degree felony murder | |
| Count Two | First degree premeditated murder | |
| Count Three | Especially aggravated robbery | Class A |
| Count Four | Attempted aggravated robbery | Class C |
| Count Five | Attempted aggravated robbery | Class C |
| Count Six | Aggravated burglary | Class C |
| Count Seven | Employing a firearm during the commission of a dangerous felony | Class C |

The following facts relating to the offenses were summarized in Defendant's presentence report:[1]

On August 16, 2015, [Defendant] and [Mr. Austin] did unlawfully and with intent to commit robbery kill Hilvar Giovani Lopez in the perpetration of or attempt to perpetrate robbery[.] [Defendant] and [Mr. Austin] did unlawfully, intentionally, and with pre-meditation kill Hilvar Giovani Lopez[.] [Defendant] and [Mr. Austin] did unlawfully, intentionally, or knowingly, take from Hilvar Giovani Lopez's person a sum of money, of value by violence or by putting Hilvar Giovani Lopez in fear, said taking accomplished with a deadly weapon and Hilvar Giovani Lopez suffered serious bodily injury[.] [Defendant] and [Mr. Austin] did unlawfully attempt to commit the offense of aggravated robbery, in that they did unlawfully, intentionally, or knowingly, attempt to take from Eladio Elias Sales' person a sum of money, of value by violence or by putting Eladio Elias Sales in fear, by use of a deadly weapon or by display of any article used or fashioned to lead Eladio Elias Sales to reasonably believe the article to be a deadly weapon[.] [Defendant] and [Mr. Austin] did unlawfully, intentionally or knowingly, attempt to take from Elmar Perez's person a sum of money, of value by violence or by putting Elmar Perez in fear, by use of a deadly weapon or by display of any article used or fashioned to lead Elmar Perez to reasonably believe the article to be a deadly weapon[.] [Defendant] did unlawfully and knowingly enter the habitation of Hilvar Giovani Lopez, Eladio Elias Sales and Elmar Perez, not open to the public, without effective consent, with intent to commit

---

[1] We have gleaned the facts of this case from the presentence report because Defendant did not include the transcripts from trial in the appellate record.

theft[.] [Defendant] and [Mr. Austin] did unlawfully and knowingly employ a firearm during the commission of or attempt to commit aggravated burglary, an offense.

Defendant and Mr. Austin proceeded to trial, and the jury found Defendant guilty of the following:

| Count | Conviction Offense | Offense Classification |
|---|---|---|
| Count One | Reckless homicide | Class D |
| Count Two | Reckless homicide | Class D |
| Count Three | Facilitation of especially aggravated robbery | Class B |
| Count Four | Attempted aggravated robbery | Class C |
| Count Five | Attempted aggravated robbery | Class C |
| Count Six | Aggravated burglary | Class C |
| Count Seven | Employing a firearm during the commission of a dangerous felony | Class C |

At the sentencing hearing, Defendant testified that he took responsibility for his actions and apologized for his conduct. Defendant stated that he fled from the scene of the offenses because he was shocked and panicked. After Defendant calmed down, he gave a statement to law enforcement because "[he] was afraid and it . . . bother[ed] [him] all day." Defendant stated that he graduated high school and that he was twenty-one years old when he committed the offenses. Regarding his prior employment history, Defendant stated that he worked in construction with his grandfather and also worked as a butcher at Ledbetter Foods for a couple of months. Defendant testified that he had no prior criminal record as a juvenile or as an adult. Defendant had not been diagnosed with a mental illness and was not taking any medications.

On cross-examination, Defendant explained that he only worked for two months because he graduated from high school when he was twenty-one and was attending school at Vatterott College but stopped attending school when he became employed. Defendant explained that he spent the remainder of his time at his girlfriend's house. Defendant explained that he was riding with Mr. Austin prior to the offenses because Mr. Austin and Mr. Austin's girlfriend were dropping Defendant off at his house. When Mr. Austin stopped at an apartment complex, Mr. Austin exited the vehicle. After a few minutes, Defendant left the vehicle to check on Mr. Austin when he observed Mr. Austin running from the victims. Defendant asserted that, during the offenses, he did not throw a tire at the victims. Instead, he "picked [the tire] up and pumped it at [the victims] and set it down" because he believed he was going to be attacked. Defendant ran back toward the vehicle and heard a gunshot. Defendant denied that he shot a gun out of the

vehicle's window as he and Mr. Austin left the offense scene. Defendant denied that he had previously been arrested for aggravated robbery on September 23, 2015.[2] Defendant acknowledged that, at the time of the offenses, he was aware that Mr. Austin was a gang member and a drug dealer.

Tarcia Smith testified that she was Defendant's mother and that Defendant was never in trouble at school or arrested as a juvenile. Ms. Smith testified that Defendant was a hard worker who was employed after he graduated high school.

The trial court determined that Defendant was a Range I standard offender. The trial court considered "the evidence presented at trial and at the sentencing hearing, the presentence report, and the principles of sentencing established by the 1989 [A]ct and arguments relative to that sentence." The trial court also considered "the nature and characteristics of the criminal conduct involved, any enhancement and mitigating factors [that] appl[ied] to the case, any statistical information provided by the Administrative Office of the Courts, and any statement the defendant [made] on his behalf." The trial court noted that it was bound by the advisory sentencing guidelines: that the "the minimum sentence within the range is the sentence which should be imposed"; that the sentence length within the range should be adjusted as appropriate by the presence or absence of mitigating and enhancement factors"; and that "the sentence length within the range should be consistent with the general purposes and principles of the sentencing act of 1989."

Regarding enhancement factors, the trial court noted that none of the enhancement factors applied to Defendant's offenses because almost all of the enhancement factors were inherent to Defendant's convictions. The trial court also found that no mitigating factors applied to Defendant's conduct. The trial court noted that Defendant "basically committed a felony murder" because the jury convicted Defendant of aggravated robbery and aggravated burglary "and a death ensued in the commission of those [offenses]." The trial court stated that Defendant "actually should be serving life in prison." The trial court merged the judgments of counts one and two and ordered Defendant to serve the following sentences:

---

[2] The presentence report reflects that this charge was dismissed for lack of probable cause on October 16, 2015.

| Count | Sentence Length | Release Eligibility Percentage |
|---|---|---|
| Count One | Four years | 30% |
| Count Two | Four years | 30% |
| Count Three | Twelve years | 30% |
| Count Four | Five years | 30% |
| Count Five | Five years | 30% |
| Count Six | Five years | 30% |
| Count Seven | Six years | 100% |

The trial court found that Defendant was "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime to which the risk to human life is high." The trial court also found that "the circumstances of the offense were aggravated in that [Defendant] participated in essentially a home invasion in which someone got killed needlessly." The trial court found that the offenses were aggravated because Defendant's participation in the offenses was "much greater than what he was discussing here in court today." The trial court concluded that "confinement for an extended period of time is necessary to protect society from . . . [D]efendant's unwillingness to lead a productive life and . . . [D]efendant's resort to criminal activity in furtherance of an anti-societal lifestyle" and that "the aggregate length of the sentences . . . was reasonably relate[d] to the offense for which [Defendant] stands convicted." The trial court noted that Defendant was treated less harshly than Mr. Austin based on the jury's verdicts. Thus, the trial court ordered the remaining counts to be served consecutively to each other for a total effective sentence of thirty-seven years.

Regarding the manner of service, the trial court noted that Defendant did not request an alternative sentence. The trial court also noted that it "may look behind any plea bargain or jury verdict and consider the true nature of the offenses actually committed." The trial court ordered Defendant to serve his sentences in the Tennessee Department of Correction because "he actually committed a felony murder and should be sentenced to life imprisonment." Defendant now timely appeals the trial court's judgments.[3]

## II. Analysis

Defendant's only issue on appeal is that the trial court abused its discretion by ordering an excessive sentence that ignored Defendant's potential for rehabilitation. Defendant notes that he had no prior criminal record before he committed the current

---

[3] We note that Defendant untimely filed his motion for new trial as well as his notice of appeal. On October 17, 2017, this court granted Defendant's motion to late-file a notice of appeal in the interest of justice. Defendant filed a notice of appeal on November 2, 2017.

offenses, he graduated high school, he was employed, he voluntarily gave a statement to law enforcement, and that, based on its verdict, the jury concluded that Defendant played a less culpable role in the offenses than Mr. Austin. The State notes that Defendant failed to include transcripts from the jury trial, "which deprives [this court] from examining the complete factual bases of the trial court's ruling" and asserts that Defendant therefore waived review of the trial court's imposition of consecutive sentences. Additionally, the State asserts that the trial court properly sentenced Defendant within its discretion.

While the State is correct in asserting that Defendant failed to include transcripts from the jury trial in the appellate record, we conclude that the record is sufficient to review Defendant's sentence. *See State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012) ("If . . . the record is adequate for a meaningful review, the appellate court may review the merits of the sentencing decision with a presumption that the missing transcript would support the ruling of the trial court."); *see also State v. Lisa B. Fulcher*, No. M2007-02160-CCA-R3-CD, 2009 WL 130190, at *3 (Tenn. Crim. App. Jan. 20, 2009) (concluding that the evidence introduced at the sentencing hearing provided an adequate record to review in the absence of the transcript of the guilty plea hearing), *no perm. app. filed*. When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

### *Sentence length*

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* Tenn. Code Ann. § 40-35-210(b)(1)-(7) (2017); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (2017).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2017); *Bise*, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2017), Sentencing Comm'n Cmts.

Here, the trial court sentenced Defendant to in-range sentences for each count. Defendant does not contest the trial court's finding that he was a Range I offender. Defendant was convicted of reckless homicide, a Class D felony, in counts one and two, and a Range I sentence for a Class D felony is three to six years. *See* Tenn. Code Ann. § 39-13-215(b) (2015) (reckless homicide is a Class D felony); *see also* Tenn. Code Ann. § 40-35-112(a)(4) (2017) (a Range I sentence for a Class D felony is two to four years). Thus, Defendant's four-year sentence for counts one and two was within the applicable range. Defendant was convicted of facilitation of especially aggravated robbery, a Class B felony, in count three, and a Range I sentence for a Class B felony is eight to twelve years. *See* Tenn. Code Ann. § 39-13-403(b) (2015) (especially aggravated robbery is a Class A felony); Tenn. Code Ann. § 39-11-403(b) (2015) ("The facilitation of the commission of a felony is an offense of the class next below the felony facilitated by the person so charged."); *see also* Tenn. Code Ann. § 40-35-112(a)(2) (2017) (a Range I sentence for a Class B felony is eight to twelve years). Defendant's twelve-year sentence for count three was within the applicable range.

Defendant was convicted of attempted aggravated robbery, a Class C felony, in counts four and five, and a Range I sentence for a Class C felony is three to six years. *See* Tenn. Code Ann. § 39-13-402(b) (2015) (aggravated robbery is a Class B felony); Tenn. Code Ann. § 39-12-107(a) (2015) ("[c]riminal attempt is an offense one (1) classification lower than the most serious crime attempted"); *see also* Tenn. Code Ann. § 40-35-112(a)(3) (2017) (a Range I sentence for a Class C felony is three to six years). Defendant's sentences of five years for counts four and five were within the applicable range. In count six, Defendant was convicted of aggravated burglary, a Class C felony. *See* Tenn. Code Ann. § 39-14-403(b) (2015) (aggravated burglary is a Class C felony); *see also* Tenn. Code Ann. § 40-35-112(a)(3) (2017) (a Range I sentence for a Class C felony is three to six years). Therefore, Defendant's sentence of five years in count six was within the applicable range.

Lastly, Defendant was convicted of employing a firearm during the commission of a dangerous felony, a Class C felony, in count seven. *See* Tenn. Code Ann. § 39-17-1324(h)(1) (2015) (employment of a firearm during the commission of a dangerous

felony is a Class C felony with a mandatory minimum six-year sentence); *see also* Tenn. Code Ann. § 40-35-112(a)(3) (2017) (a Range I sentence for a Class C felony is three to six years). Defendant's sentence of six years for count seven was also within the applicable range. Because the trial court ordered within-range sentences, the trial court's decisions receive a presumption of reasonableness, and we will not reverse absent an abuse of discretion. Defendant asserts that the trial court should have considered his lack of a prior criminal record, his employment, and other factors in mitigation. However, the trial court is not bound by the advisory mitigating and enhancement factors. *See* Tenn. Code Ann. § 40-15-114 (Supp. 2015); *see also Bise*, 380 S.W.3d at 699 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The trial court found that no enhancement or mitigating factors applied to Defendant's sentences and instead focused on the circumstances of Defendant's offenses, as was within the trial court's discretion. Defendant is not entitled to relief on this ground.

### *Consecutive sentencing*

In *State v. Pollard*, the Tennessee Supreme Court expanded its holding in *Bise* to a trial court's decisions regarding consecutive sentencing. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). Tennessee Code Annotated section 40-35-115 sets forth seven different situations in which a trial court may impose consecutive sentencing, including when "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code Ann. § 40-35-115(b)(4) (2017); *see State v. Wilkerson*, 905 S.W.2d 933, 936 (Tenn. 1995). Before a trial court may impose consecutive sentences on the basis that a defendant is a dangerous offender, the trial court must also find "that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences . . . reasonably relate to the severity of the offenses committed." *Wilkerson*, 905 S.W.2d at 939. In order to limit the use of the "dangerous offender" category to cases where it is warranted, our supreme court has stated that the trial court must make specific findings about "particular facts" which show that the *Wilkerson* factors apply to the defendant. *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999).

Here, the trial court found that Defendant was "a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime to which the risk to human life is high." The trial court also found that "the circumstances of the offense were aggravated in that [Defendant] participated in essentially a home invasion in which someone got killed needlessly." The trial court found that the offenses were aggravated because Defendant's participation in the offenses was "much greater than what he was discussing here in court today." The trial court concluded that "confinement for an extended period of time is necessary to protect

society from . . . [D]efendant's unwillingness to lead a productive life and . . . [D]efendant's resort to criminal activity in furtherance of an anti-societal lifestyle" and that "the aggregate length of the sentences . . . [were] reasonably relate[d] to the offense for which [Defendant] stands convicted."

We conclude that the trial court properly exercised its discretion in ordering consecutive sentences in Defendant's case. The trial court made the findings required under *Wilkerson* and cited specific facts from Defendant's case to support the imposition of consecutive sentences. Defendant was involved in a series of serious criminal offenses that resulted in the death of one of the victims. Defendant is not entitled to relief on this ground.

### *Denial of alternative sentencing*

The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in *Bise* also applies to a trial court's decision to grant or deny probation. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *Bise*, 380 S.W. 3d at 708). Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6)(A) (2017).

Tennessee Code Annotated section 40-35-303(a) states that:

> [a] defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less; however, no defendant shall be eligible for probation under this chapter if convicted of a violation of § 39-13-213(a)(2), § 39-13-304, § 39-13-402, § 39-13-504, § 39-13-532, § 39-15-402, § 39-17-417(b) or (i), § 39-17-1003, § 39-17-1004 or § 39-17-1005. A defendant shall also be eligible for probation pursuant to § 40-36-106(e)(3).

Tenn. Code Ann. § 40-35-303(a)(2017). A defendant has the burden of establishing that he is suitable for probation and "demonstrating that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *Carter*, 254 S.W.3d at 347 (quoting *State v. Housewright*, 982 S.W.2d 354, 357 (Tenn. Crim. App. 1997)).

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1) (2017).

In the current case, the trial court noted that Defendant did not request alternative sentences. In any event, the trial court stated that it "may look behind any plea bargain or jury verdict and consider the true nature of the offenses actually committed" and ordered Defendant to serve his sentences in the Department of Correction because "he actually committed a felony murder and should be sentenced to life imprisonment." "When determining whether probation is appropriate it is proper 'to look behind the plea bargain and consider the true nature of the offenses committed.'" *State v. Pierce*, 138 S.W.3d 820, 828 (Tenn. 2004) (quoting *State v. Hollingsworth*, 647 S.W.2d 937, 939 (Tenn. 1983)). We conclude that the trial court did not abuse its discretion by ordering Defendant to serve his sentences in confinement. Defendant is not entitled to relief on this ground.

## III. Conclusion

After a thorough review of the facts and applicable case law, we affirm the trial court's judgments.

_____
ROBERT L. HOLLOWAY, JR., JUDGE